# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | **WILLIAM T. HART** | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | **00 C 2984** | **DATE** | **JANUARY 3 , 2002** |
| **CASE TITLE** | **GLORIA DENSON v. NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPORATION, etc., et al.** | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motion to strike plaintiff's affidavit [79] is denied without prejudice. Defendants' motion for summary judgment [61] is granted in part and denied in part. Counts I and II of the Second Amended Complaint are dismissed. Count III is limited to being based on an injury or injuries occurring in August 1999 or later. Defendants Countess Cary, Thomas Less, and Frank Racibozynski are dismissed from this action. In open court on February 13, 2002 at 11:00 a.m., the remaining parties shall present an original and one copy of their final pretrial order in full compliance with Local Rule 16.1 and Local Rule Forms 16.1.1 and 16.1.2.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 5 | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | JAN 4 2002 | | |
| | Docketing to mail notices. | | date docketed | | |
| | Mail AO 450 form. | | | | 82 |
| | Copy to judge/magistrate judge. | | docketing deputy initials | | |
| | | | Jan 3 , 2002 | | |
| | | | date mailed notice | | |
| cw | courtroom deputy's initials | | mqm | | |
| | | | mailing Initials | | |

U.S. DISTRICT COURT
CLERK
02 JAN -3 PH 5: 30

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

JAN - 4 2002

GLORIA DENSON,                          )
                                        )
                Plaintiff,              )
                                        )
        v.                              )    No. 00 C 2984
                                        )
NORTHEAST ILLINOIS REGIONAL             )
COMMUTER RAILROAD CORPORATION,          )
d/b/a/ Metra, COUNTESS CARY,            )
THOMAS LESS, and FRANK                  )
RACIBOZYNSKI,                           )
                                        )
                Defendants.             )


## MEMORANDUM OPINION AND ORDER


        Plaintiff Gloria Denson, an African-American woman, is a
former employee of defendant Northeast Illinois Regional Commuter
Railroad Corporation, which does business as Metra.  Defendant
Countess Cary has been Metra's Director of Equal Employment
Opportunities and Employee Relations since June 1998.  Defendant
Frank Racibozynski has been Metra's Chief Financial Officer since
July 1987.  Since January 1998, defendant Thomas Less has been
Metra's Controller.  Prior to that, Less was Metra's Director
of Accounting and Financial Systems for approximately five
years.  Plaintiff's Second Amended Complaint contains three
counts.  Count I is a claim that Metra discriminated against
plaintiff because of her race and/or in retaliation for prior



discrimination complaints by (a) denying her a promotion,
(b) proceeding on an allegedly frivolous charge that plaintiff
sexually harassed another employee, (c) failing to implement work
station changes recommended by an ergonomic specialist, and
(d) discharging plaintiff all in violation of Title VII of the
Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Count II is
a claim against all defendants[1] that they violated 42 U.S.C.
§ 1981 by denying the promotion and discharging her because of
racial discrimination or retaliation. Count III is a claim
against Metra under the Federal Employers' Liability Act
("FELA"), 45 U.S.C. §§ 51-60, that plaintiff's work caused an
injury to her shoulder and arm.[2] Defendants move for summary
judgment on all claims.[3]

On a motion for summary judgment, the entire record is
considered with all reasonable inferences drawn in favor of the
nonmovant and all factual disputes resolved in favor of the
nonmovant. Schneiker v. Fortis Insurance Co., 200 F.3d 1055,

---

[1]In response to defendants' summary judgment motion,
plaintiff concedes she does not have a viable § 1981 claim
against Metra.

[2]In response to the summary judgment motion, plaintiff
concedes the FELA claim must be limited to a new or reaggravated
injury occurring in August 1999 and thereafter.

[3]Defendants also move to strike plaintiff's affidavit
that was filed in support of her response to summary judgment.
That motion will be denied without prejudice in that the
affidavit will not be stricken. To the extent, however, that the
affidavit contains inadmissible evidence, it will not be credited
in determining whether genuine factual disputes exist.

1057 (7th Cir. 2000); Baron v. City of Highland Park, 195 F.3d 333, 337-38 (7th Cir. 1999). The burden of establishing a lack of any genuine issue of material fact rests on the movant. Wollin v. Gondert, 192 F.3d 616, 621-22 (7th Cir. 1999); Essex v. United Parcel Service, Inc., 111 F.3d 1304, 1308 (7th Cir. 1997). The nonmovant, however, must make a showing sufficient to establish any essential element for which she will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Shank v. William R. Hague, Inc., 192 F.3d 675, 681 (7th Cir. 1999); Wintz v. Northrop Corp., 110 F.3d 508, 512 (7th Cir. 1997). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. Celotex, 477 U.S. at 324. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. See NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 236 (7th Cir.), cert. denied, 515 U.S. 1104 (1995); Covalt v. Carey Canada, Inc., 950 F.2d 481, 485 (7th Cir. 1991); Collins v. Associated Pathologists, Ltd., 844 F.2d 473, 476-77 (7th Cir.), cert. denied, 488 U.S. 852 (1988). As the Seventh Circuit has summarized:

> The moving party bears the initial burden of
> directing the district court to the determinative
> issues and the available evidence that pertains
> to each. "[A] party seeking summary judgment
> always bears the initial responsibility of
> informing the district court of the basis for
> its motion, and identifying those portions
> of 'the pleadings, depositions, answers to
> interrogatories, and admissions on file, together
> with the affidavits, if any' which it believes

demonstrate the absence of a genuine issue of
material fact." Celotex Corp. v. Catrett, 477
U.S. 317, 323 (1986); id. at 325 ("the burden on
the moving party may be discharged by 'showing'--
that is, pointing out to the district court--that
there is an absence of evidence to support the
nonmoving party's case").  Then, with respect to
issues that the non-moving party will bear the
burden of proving at trial, the non-moving party
must come forward with affidavits, depositions,
answers to interrogatories or admissions and
designate specific facts which establish that
there is a genuine issue for trial.  Id. at
324.  The non-moving party cannot rest on the
pleadings alone, but must designate specific
facts in affidavits, depositions, answers to
interrogatories or admissions that establish that
there is a genuine triable issue.  Id.  The
non-moving party "must do more than simply show
that there is some metaphysical doubt as to the
material facts." Matsushita Elec. Indus. Co. v.
Zenith Radio Corp., 475 U.S. 574, 586 (1986).
"The mere existence of a scintilla of evidence in
support of the [non-moving party's] position will
be insufficient; there must be evidence on which
the jury could reasonably find for the
[non-moving party]." Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 252 (1986).

Selan v. Kiley, 969 F.2d 560, 564 (7th Cir. 1992).

Resolving all genuine factual disputes and drawing all

reasonable inferences in plaintiff's favor, the facts assumed to

be true for purposes of summary judgment are as follows.

Beginning in January 1988, plaintiff worked for defendants as a

clerk and secretary.  In 1992, she began working as a Payroll

Clerk in the Payroll Section of the Accounting Department, which

was the position she was in when discharged in February 2000.

Throughout her employment, plaintiff was a member of the

Transportation and Communications International Union and a

collective bargaining agreement applied to her employment.

Relying on plaintiff's personnel file, defendants recite a number of incidents and disciplinary actions dating back to 1988 that defendants contend the personnel file "indicates" happened. As to most of these statements, plaintiff generally objects that (a) the personnel files are not admissible evidence, (b) the facts are irrelevant to the discrimination actually alleged in the complaint, and/or (c) the stated facts either mischaracterize what is in the cited documents or are unsupported by the cited documents. There is no dispute that the documents maintained in Metra's personnel files are kept in the normal course of business and contemporaneously recorded. It is also represented that Metra only retains documents determined to be accurate. Plaintiff apparently objects that some of the facts contained therein are not based on personal knowledge or lack sufficient indicia of reliability.[4]

Under Fed. R. Evid. 803(6), a document in a personnel file constitutes admissible evidence to the extent it is "(1) a contemporaneous (2) record of a business activity, (3) which is regularly conducted, and (4) recorded as a matter of regular practice, (5) by or based on information from a person with

---

[4]Without citing any supporting case law, plaintiff objects: "Thus, the 'facts' asserted through these personnel documents constitute the basest form of hearsay, i.e. unverified and non-evidentiary statements/documentation that defendant seeks to establish as fact because Metra has unilaterally determined that the statements are 'accurate.' They are not self-authenticating. Rather, they are self-serving, and submitted solely to establish the non-evidentiary assertions contained therein as fact." Pl. Response to Def. Stmt. of Uncontested Facts & Supp. Stmt. of Uncontested Facts at 2.

knowledge, and (6) which has indicia of reliability." <u>Jones v.</u>
<u>Board of Trustees of Community College District No. 508</u>,
75 F. Supp. 2d 885, 888 (N.D. Ill. 1999). "Lack of personal
knowledge of the entrant or maker may be shown to affect the
weight to be given to the record, but does not affect its
admissibility. Nor is admissibility affected by the fact that
the person furnishing the information upon personal knowledge did
not participate in the matter recorded." Michael H. Graham,
<u>Federal Practice & Procedure</u> § 7047 at 398 & n.8 (interim ed.
2000). <u>See also</u> <u>id.</u> at 410-12 & nn.14-16.

The personnel file generally has indicia of reliability
and particular documents rely on a person with knowledge. The
documents in plaintiff's personnel file generally are admissible.
In any event, plaintiff ignores that defendants generally state
the personnel file "indicates" a particular fact. Except to the
extent objection (c) applies, the file indicates a particular
fact regardless of whether that fact is actually true. The file
would be admissible to show that certain facts were contained
therein, regardless of whether the underlying facts were actually
true. <u>Ogborn v. United Food & Commercial Workers, Local No. 881</u>,
2000 WL 1409855 *3 n.8 (N.D. Ill. Sept. 25, 2000). Even if the
contents of the personnel file were not admissible to show the
facts contained therein are true, to the extent a decisionmaker
relied upon the contents of the personnel file, the contents
would be admissible as relevant to the decisionmaker's
motivation. It is plaintiff's relevancy objection that has

merit.  The past employment history is only relevant to the

extent relied upon by the persons making the adverse employment

decisions that are challenged or as relevant to show a

chronology.  There is no indication that most of the incidents

recited by defendants were considered by the pertinent

decisionmakers.  Except to the extent recited below, the past

incidents are not considered in ruling on summary judgment.

On December 13, 1996, plaintiff and Accounting Services

Director Michael Sweeney had a loud discussion in an open area of

the office.  Sweeney ordered plaintiff to go to the office of

Jacqueline Franklin, plaintiff's immediate supervisor, in order

to complete the discussion.  Plaintiff did not comply.[5]

Plaintiff was suspended five days for insubordination.  Defendant

Less conducted the investigation that concluded plaintiff was

insubordinate.  Defendant Racibozynski determined plaintiff

should be suspended five days and the Public Law Board upheld the

suspension.[6]  The five-day suspension was subsequently a subject

_____

[5]Support for the underlying conduct is not limited to
plaintiff's personnel records.  Franklin indicates in her
affidavit that she was present during the discussion.  Franklin's
affidavit would therefore be based on personal knowledge and
supports that plaintiff disobeyed the order.  Plaintiff's own
affidavit contains no denial of having disobeyed the order nor
does plaintiff cite any deposition testimony to that effect.

[6]Racibozynski states in his second affidavit that he
ordinarily consults with the Human Resources [sic] Department as
to an appropriate discipline.  He also states that, "to the best
of [his] recollection," Less did not recommend a five-day
suspension.  He does not state that an investigator generally
does not recommend a discipline or that, in this instance, Less
made no discipline recommendation whatsoever--just that Less did
not recommend five days.  Neither does Racibozynski state with

of an EEOC complaint and eventually a federal lawsuit.  See
Denson v. Metra, No. 98 C 6019 (N.D. Ill.) ("Denson I").
Denson I included allegations as to a number of other incidents
as well.  Denson I was still pending at the time plaintiff was
discharged in February 2000.  In April 2000, Denson I was
settled, with Metra paying plaintiff $1,100 plus another $7,500
for her attorney.

In late 1997, plaintiff applied for a Fixed Assets Clerk
position.  Less was the selecting official for this position.
His stated basis for not selecting plaintiff was that she did not
meet the minimum qualifications for the position.  In
January 1998, a White female from outside Metra was instead
hired.[7]  On her application form and in her job interview with
Less, the person hired indicated she met the qualifications for
the position and had 20 hours of college accounting.  In his
hiring recommendation, Less suggested that the Human Relations
Department recheck the hiree's academic credentials.  A

---

absolute certainty that Less did not recommend a five-day
suspension.  Neither of Less's affidavits contain any statement
regarding his investigation of this incident or any possible
recommendation he made.  Drawing all reasonable inferences in
plaintiff's favor, it will be inferred that Less recommended to
Racibozynski that plaintiff be suspended.  (Both Less and
Racibozynski provided affidavits for defendants' motion for
summary judgment and second affidavits for defendants' motion to
strike.)

[7]Plaintiff contends the hiree was only 18 years old and a
recent high school graduate, but there is no competent evidence
supporting that contention.  Plaintiff's affidavit does support
that plaintiff believed this was true and that such a rumor was
repeated at Metra.

background check reported that the woman had been in college for two years and had only completed 16 hours of accounting. It was thereafter requested that the woman resign and she did. Plaintiff's failure to obtain this promotion was raised in an EEOC charge and was also alleged in Denson I.

In the EEOC charge regarding the five-day suspension and the separate charge regarding the Fixed Assets Clerk position, Less and Racibozynski are not specifically mentioned. In the pro se complaint and attorney-drafted amended complaint[8] filed in Denson I, Less and Racibozynski are not expressly alleged to be the decisionmakers as to either of these two employment actions.[9] As is appropriate for a Title VII action, Metra (plaintiff's employer) is the only named defendant in Denson I and the discriminatory conduct is alleged to have been committed by Metra. However, since Racibozynski made the final decision to suspend plaintiff (and Less investigated the incident) and Less made the decision not to hire plaintiff as the Fixed Assets Clerk, the allegations of the respective EEOC charges and the Denson I complaints clearly implicate Less and Racibozynski in engaging in discriminatory conduct. In their second affidavits,

---

[8]Attached as an exhibit to defendants' present motion to strike is the pro se complaint filed in Denson I. Judicial notice has been taken of the amended complaint filed in Denson I, see Denson I, No. 98 C 6019, Docket Entry 18, as well as other documents in that court file.

[9]Attached to the pro se complaint is a July 8, 1998 letter to another Metra official which mentions Less and Racibozynski regarding their participation in other incidents.

Less and Racibozynski both state:  "I have no knowledge as to whether I was mentioned in the [Denson I] Complaint or that I was implicated in the Complaint."  The identical sentences contained in the two affidavits were obviously drafted by counsel and are written narrowly, referring specifically to "the Complaint." Defendants do not state that they were unaware of the EEOC charges being filed nor do they specifically state that they were unaware of there being a pending lawsuit involving the two incidents.  While being unaware of having been "implicated in the Complaint" could be read as meaning defendants were unaware of the incidents raised in the lawsuit, on the present summary judgment motion inferences are to be drawn in plaintiff's favor, not defendants'. favor.  The affidavits should be construed narrowly, within reason.  Moreover, Denson I was pending for approximately one and one-half years before being settled and the two EEOC charges were filed approximately six months and one year before the lawsuit.  Even if Less and Racibozynski were not deposed during discovery in Denson I, it is highly doubtful that the charges and lawsuit pended for that long a period of time without Metra's counsel or EEO personnel contacting the supervisors responsible for the decisions challenged as discriminatory as part of their own investigation into the incidents.  It is reasonably inferred that Less and Racibozynski were aware of one or both of the EEOC charges and the lawsuit and that they were aware they were implicated as engaging in discriminatory conduct.

In September 1999, Metra posted a Payroll Supervisor opening that would be supervised by Franklin. The posted "minimum acceptable qualifications" were:

> The requirements for the position, as numbered and underlined below, represent the minimum acceptable qualifications. Applicants must meet each of the requirements in order to be considered for the position. It is desired, but not required, that applicants meet the preferred qualifications, as well. It is the applicant's responsibility to be certain that all information to be used in establishing qualifications is on file or included with application, and in either case properly documented. Information included in employee personnel file will be reviewed to determine minimum qualification sufficiency. Also, information on file may be considered a factor in the final selection process. . . .
>
> **(1)** Must possess a minimum of 12 academic semester hours at the college level and possess a minimum of two (2) years of related work experience (OR) possess a minimum of five (5) years of professional accounting or payroll experience in a data processing environment, including exposure to a union payroll environment. **(2)** Must have proven experience with mainframe computer processing applications. **(3)** Personal computer skills including spreadsheet is required. **(4)** Basic understanding of internal control and administrative procedures over a payroll process and on-line data entry essential. **(5)** Must have demonstrated interpersonal and people, communication (written and oral) and leadership skills. **(6)** Must have good judgment, ability to maintain confidentiality and good organizational abilities. **(7)** Supervisory experience is preferred.

Pl. Exh. 3.

Less and Franklin conducted the interviews for the position. At plaintiff's interview, Franklin was present, but

Less asked all the questions.[10]  According to Franklin's affidavit, she made the decision as to who would be hired, not Less.[11]  Plaintiff, however, points to conflicting evidence. First, she points to the fact that Less asked all the questions at her interview.  More to point, she provides a copy of the October 22, 1999 letter informing her she was not hired for the position.  The letter is signed by Tom Blum, the Manager of Employment Administration in the Human Relations Department (formerly, the Personnel Department), and states that Less has considered plaintiff's qualifications, but Less has decided to expand the search to persons outside Metra.  Defendants contend Blum had no actual knowledge of who made the hiring decision and simply assumed it was Less.  Blum's affidavit, however, contains

---

[10]Defendants contend that plaintiff's support for this contention, Pl. Aff. ¶ 31, should be ignored because it is contradicted by her earlier deposition testimony and no adequate and plausible explanation is provided for the inconsistency.  See Piscione v. Ernst & Young, L.L.P., 171 F.3d 527, 532-33 (7th Cir. 1999); Patterson v. Chicago Association for Retarded Citizens, 150 F.3d 719, 724 (7th Cir. 1998); Russell v. Acme-Evans Co., 51 F.3d 64, 67-68 (7th Cir. 1995).  The cited deposition testimony, however, does not contradict the affidavit.  On page 28 of her deposition, plaintiff answered that she was interviewed by Franklin and Less.  She states nothing about who actually asked the questions.  On page 58 of her deposition, plaintiff does state, "Personally I cannot remember that interview." However, plaintiff was in the midst of being deposed about her knowledge of accounting and the specific question to which she responded was whether she was asked questions about accounting terminology during the Payroll Supervisor interview.  Viewed in context, her answer could reasonably be understood as meaning she could not remember that part of the interview.  Paragraph 31 of plaintiff's present affidavit will not be ignored.

[11]Less's two affidavits are silent on the issue.

no such statement.  In any event, this official letter is
certainly evidence from which it can be inferred that Less was
involved in the hiring decision.  Third, plaintiff states in her
affidavit that Franklin told her Less made the decision to hire
another person.  This statement may be used to impeach the
testimony indicated by Franklin's affidavit.  It would also be
affirmatively admissible as non-hearsay, against both Metra and
Less.  Even if Less was the final authority, Franklin was at
least involved in the decisionmaking process, and therefore
Franklin would be an agent of Metra and Less speaking within the
scope of her agency when informing plaintiff why plaintiff was
not promoted.  See Fed. R. Evid. 801(d)(2)(D); Swanson v.
Leggett & Platt, Inc., 154 F.3d 730, 733 (7th Cir. 1998).
Plaintiff points to adequate evidence to support that Less was
involved in making the decision as to who would be hired for the
Payroll Supervisor position.

Plaintiff contends she met the minimum qualifications for
the position because the Qualifications Review Committee of the
Human Relations Department found her qualified.  Blum explains in
his affidavit, however, that this Committee only reviewed that
plaintiff had seven years of experience as a Payroll Clerk and
therefore accepted her statements in her application that she had
all the minimum qualifications because it was possible she
acquired such skills in that position.  The Committee did not
interview plaintiff or any of her supervisors to determine
whether she had actually acquired the stated skills.  Franklin's

affidavit shows that it was learned during the job interview that plaintiff did not have all the minimum qualifications. As to qualification (1), plaintiff did not have the academic background. Although she had more than five years' experience as a Payroll Clerk, her responses to interview questions revealed she performed clerical duties and had not performed accounting payroll work or acquired accounting payroll skills. Plaintiff did not have the computer skills listed in qualifications (2) and (3), nor a basic understanding of payroll controls and procedures recited in qualification (4). Plaintiff also did not have the preferred qualification of supervisory experience. Plaintiff presents no sufficient evidence supporting a genuine factual dispute as to her having these minimum qualifications.

The person selected for the position was Mark Cinabro, a White male. Franklin's affidavit supports that he was found to have all the minimum qualifications, plus the preferred qualification. Plaintiff points to no evidence indicating otherwise. Plaintiff contends that Cinabro's application was sought and backdated after it was decided that plaintiff would be rejected.[12] Cinabro, however, was included on the original list of three candidates found to be qualified to be interviewed. The document plaintiff contends is backdated does not have Cinabro's

---

[12]Plaintiff concedes that Cinabro was a promoted Metra employee, not an outside hire as Blum's letter implied would be the case.

name on it and plaintiff does not present an adequate foundation for the document.

On May 24, 1999, Metra employee Ellen Holmes filed an internal EEO complaint that she characterized as a sexual harassment complaint. Holmes did not work in plaintiff's Section, but often visited Valerie Simon who did work in plaintiff's Section. Holmes complained that plaintiff was spreading false rumors that Holmes was having sexual relations with plaintiff's boyfriend, another Metra employee. The truth, however, was that Holmes herself was telling fellow employees that she was having sexual relations with the boyfriend. Plaintiff was eventually informed that the investigation was dropped because Holmes was transferred to a location other than the downtown office in which plaintiff worked. Plaintiff was not disciplined for the internal charge.

A few months later, Holmes returned to the downtown office and was again a frequent visitor of Simon. On August 28, 1999, defendant Cary held a meeting with plaintiff and Holmes and they both signed a mediation agreement. Plaintiff, however, continued to be disturbed by Holmes's visits to Simon. On December 7, 1999, plaintiff filed an internal complaint alleging Simon was instigating conflict between plaintiff and Holmes. On December 8, Franklin (with Cinabro as a management witness) issued letters of caution to both plaintiff and Simon regarding their December 7 verbal exchange. The next day, plaintiff filed an internal complaint alleging that the letter of caution was in

retaliation for her December 7 complaint. Under collective bargaining rules, plaintiff requested a hearing on the letter of caution. No hearing was held before plaintiff was discharged.

Beginning in July 1997, plaintiff had pain in her right shoulder which she attributed to repetitive work duties. Eventually the pain spread to her entire arm and, on April 5, 1999, plaintiff filed an accident report with Metra in which she stated the injury occurred on April 1, 1999. Thereafter, Metra sent plaintiff to various doctors and for various examinations. An ergonomic study of plaintiff's work station was also conducted. That study recommended various changes to the work station, all of which were provided by June 1999 except for a longer desk to provide an increased work area near plaintiff's computer. On June 3, 1999, plaintiff signed a form release in which she agreed to receive a $2,100 payment to "release and forever discharge . . . METRA . . . from all claims, demands, actions and causes of action of every kind whatsoever and including, but without limitation of the foregoing, all liability for damages, costs, expenses and compensation of any kind, nature or description now existing or which may hereafter arise from or out of injuries and damages, known or unknown, permanent or otherwise, . . . sustained or received by me at or near Chicago, State of Illinois, on or about the 1st. day of April, 1999. The medical portion of this claim will remain open for an additional six (6) months." The parties agree that the last sentence refers

to being entitled to six more months of medical treatment.  By
May 1999, plaintiff felt substantially better.

By late August 1999, though, plaintiff again complained
of arm and shoulder pain.  On October 11, Metra sent her to a
doctor who examined her and returned her to work unrestricted.
At that time, Franklin also removed all batch keying
responsibility from plaintiff's work assignments.  It is
reasonable to infer that batch keying was removed from
plaintiff's duties, at least in part, because of her medical
problem.

On November 2, 1999, another ergonomic study was
conducted.  It was recommended that plaintiff distribute date-
stamping and typing/lifting timesheets between her left and right
arm.  It was also recommended that she be provided with a 40-inch
high table so that she could stand while date-stamping and also
that she be provided with an additional file cabinet in order to
be able to remove clutter from her desk.  Additionally, it was
determined plaintiff was physically capable of working without
restrictions.  The recommended equipment was not provided prior
to plaintiff's discharge and there is no evidence that it had
even been ordered prior to her discharge.[13]  Plaintiff herself
did not specifically request the new equipment.  On January 6,

---

[13]Metra also contends plaintiff never followed the
instruction to alternate hands.  Plaintiff does not dispute that
she did not begin alternating hands, but that was either because
she was never informed of the recommendation or because she
believed she needed the new equipment to be able to do that.  See
Pl. Dep. at 162-64.

2000, plaintiff filed a new report of injury with Metra. She was again sent to the doctor who released her to work without restriction.

In late November 1999, Cinabro began working in the Payroll Supervisor position, reporting directly to Franklin. Prior to January 21, 2000, Cinabro had never assigned any work to plaintiff. On January 12, 2000, Franklin held a staff meeting attended by all subordinate staff in the Payroll Section who were present that day, which included Cinabro. Plaintiff's job assignments were specifically discussed at that meeting. It was stressed that plaintiff opening, stamping, and distributing the mail was her highest priority. Her next priority was to file unit records. It was again confirmed that plaintiff had no batch keying duties.

On Friday, January 21, 2000,[14] Franklin and Simon were both absent from work. Cinabro was the acting supervisor of the Payroll Section. That morning, plaintiff informed Cinabro that her arm and shoulder were hurting quite a bit and she was unsure she could work the entire day. On that day, the Payroll Section was working on payroll checks that would be issued the following

---

[14]As support for some of her factual statements related to the January 21 incident, plaintiff relies on her recollection of Cinabro's deposition testimony. These statements are not credited. To the extent plaintiff relies on Cinabro's deposition testimony, she should have provided the deposition transcript itself. See Allen v. Minnstar, Inc., 8 F.3d 1470, 1475 (10th Cir. 1993) (quoting Whitlock v. Duke University, 829 F.2d 1340, 1343 (4th Cir. 1987)); Crown Heights Jewish Community Council, Inc. v. Fischer, 63 F. Supp. 2d 231, 234 (E.D.N.Y. 1999), aff'd by unpublished order, 216 F.3d 1071 (2d Cir. 2000).

Wednesday. For the checks to be issued by Wednesday, the data had.to be input by close of business Tuesday.[15] Shortly after having been informed plaintiff's arm hurt, Cinabro directed plaintiff to key payroll batches that were Simon's work. Plaintiff refused. Cinabro returned with a witness and plaintiff again refused, but this time stated she would perform other work and also pointed out that there were others available to do the keying.[16]

Cinabro then went with plaintiff to Less's office, who, as Controller, oversaw the Accounting Department. Less began to tell plaintiff that her refusal to do the work could constitute insubordination. It was established custom and practice under the applicable union contract that an employee is entitled to have a union representative present when two or more management officials are discussing the employee's performance or a disciplinary issue. Plaintiff was aware of this custom and requested that a union representative be present. Less refused

---

[15]Citing Cinabro's affidavit, defendants contend the checks were to be issued on Monday. No such statement is contained in Cinabro's affidavit. As an experienced Payroll Clerk, plaintiff can testify on personal knowledge as to the day paychecks are issued and when the data must be input. Paragraph 71 of plaintiff's affidavit is not contradicted by the deposition testimony cited by defendants. See Def. Motion to Strike ¶ 21.

[16]Plaintiff provides a somewhat different description of the two encounters in her affidavit. However, since the affidavit contradicts plaintiff's deposition testimony and no explanation is provided, the deposition testimony is taken as true.

to have a union representative present[17] and plaintiff was also beginning to feel ill, so plaintiff walked out of the meeting. Plaintiff went to Racibozynski's office and informed him of what had happened. Shortly thereafter, plaintiff followed proper procedures for signing out and went home ill.

Plaintiff was charged with insubordination for refusing to perform the keying and Valerie O'Neil, a trainmaster, conducted the investigation, which included a hearing with plaintiff and others as witnesses. O'Neil recommended to Racibozynski that the charge be sustained. Racibozynski agreed and he recommended to the Executive Director that plaintiff be discharged. The Executive Director concurred and plaintiff was discharged. Plaintiff appealed before a Special Adjustment Board and the dismissal was upheld.

As regards the Title VII and § 1981 claims, plaintiff does not contend she has any direct evidence of a discriminatory or retaliatory motive. Therefore she must rely on the indirect method of proof set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny. Wade v. Lerner New York, Inc., 243 F.3d 319, 322 (7th Cir. 2001). Under the indirect method, plaintiff must first establish a prima facie case of discrimination. If she does so, a burden of production shifts to

---

[17]In his second affidavit, Less states that he did not believe a union representative had to be present "because [plaintiff] was not being disciplined, she was being instructed to do her work, and she was being warned about the consequences of her refusal." Less 2d Aff. ¶ 5.

defendant to offer a legitimate and nondiscriminatory reason for the adverse employment action. If defendant makes this showing, plaintiff must show that defendant's proffered reason was pretext. Id.; Freeman v. Madison Metropolitan School District, 231 F.3d 374, 379 (7th Cir. 2000). At all times, the burden of persuasion remains with plaintiff. Jackson v. E.J. Brach Corp., 176 F.3d 971, 982 (7th Cir. 1999); Adreani v. First Colonial Bankshares Corp., 154 F.3d 389, 394 (7th Cir. 1998). To show that an employer's stated ground for an adverse employment action is pretextual, a plaintiff generally must present either direct evidence that an illegitimate ground was a motivating factor in the employer's decision or present a material factual dispute as to the sincerity of the proffered reason. Freeman, 231 F.3d at 379; Collier v. Budd Co., 66 F.3d 886, 892 (7th Cir. 1995) (quoting Colosi v. Electri-Flex Co., 965 F.2d 500, 502 (7th Cir. 1992)). As to the latter, it must be shown (a) that the proffered reason had no basis in fact, (b) that the proffered reason did not actually motivate the decision, or (c) that the reason was an insufficient reason to motivate the adverse action. Freeman, 231 F.3d at 379; O'Connor v. DePaul University, 123 F.3d 665, 670 (7th Cir. 1997); McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 798 (7th Cir. 1997); Collier, 66 F.3d at 892 (quoting Cliff v. Board of School Commissioners of City of Indianapolis, Ind., 42 F.3d 403, 412 (7th Cir. 1994)).

A prima facie case of a discriminatory failure to promote can be made out by showing: (1) plaintiff was a member of a

protected group (African-American); (2) she applied for and was
qualified for an open position; (3) she was not promoted; and
(4) a person outside the protected group received the promotion
or the position remained open. Wade, 243 F.3d at 323-24;
Howard v. Lear Corp. EEDS & Interiors, 234 F.3d 1002, 1005-06
(7th Cir. 2000); Bell v. Environmental Protection Agency, 232
F.3d 546, 549 (7th Cir. 2000); Hasham v. California State Board
of Equalization, 200 F.3d 1035, 1044 (7th Cir. 2000).
Alternatively, the fourth element may be satisfied by other
evidence from which a discriminatory intent may be inferred.
Hasham, 200 F.3d at 1044; Pafford v. Herman, 148 F.3d 658, 669
(7th Cir.), cert. denied, 525 U.S. 1020 (1998). A prima facie
case of a discriminatory discharge can be made out by showing
that:  (1) plaintiff was a member of a protected group
(African-American); (2) she was performing to her employer's
legitimate expectations; (3) she was discharged; and (4) a
similarly situated employee outside the protected group was
treated more favorably. Lalvani v. Cook County, Ill., 269 F.3d
785, 789 (7th Cir. 2001); Logan v. Kautex Textron North America,
259 F.3d 635, 639 (7th Cir. 2001). A prima facie case of
retaliation may be made out by showing:  (1) plaintiff engaged in
statutorily protected activity; (2) she subsequently suffered an
adverse, job-related action; and (3) there is a causal link
between the protected activity and the adverse action. Lalvani,
269 F.3d at 790; Dunn v. Nordstrom, Inc., 260 F.3d 778, 784 (7th

Cir. 2001); Basith v. Cook County, 241 F.3d 919, 933 (7th Cir. 2001); Bell, 232 F.3d at 554.

As to both the Title VII and § 1981 claims that the Payroll Supervisor promotion was discriminatorily denied, plaintiff fails to make out a prima facie case in that she has not shown that she met the minimum qualifications for the position. Even if it were found that she met the minimum qualifications, her claim would fail because the evidence supports that Cinabro was hired because he was more qualified than plaintiff. Plaintiff has not shown that that reason was pretext.

As to the retaliation claims based on the denial of a promotion, plaintiff does satisfy the first two elements of the prima facie case. As to the third element, the Qualifications Review Committee made its determination on September 23, 1999 and the letter of rejection to plaintiff is dated October 22, 1999. The job interview occurred in late September. As of that point in time, Denson I had been pending for approximately one year. On September 22, 1999, Denson I was dismissed without prejudice for failure to prosecute in that plaintiff, whose attorney had withdrawn in July, had not responded to discovery. On October 21, 1999, represented by a new attorney, plaintiff filed with the court and mailed to opposing counsel a motion to reinstate the case which was granted on October 27. See Denson I, No. 98 C 6019, Docket Entries 29-33. Thus, it could possibly be inferred that, at the time Less was involved in the

promotional process, he was particularly aware of the pending litigation in which his conduct was implicated. Plaintiff may satisfy the causal nexus element of the retaliation claim. That, however, need not be decided. Even assuming plaintiff makes out a prima facie case of retaliation, her claim fails because she cannot show that selecting Cinabro because he was more qualified was pretextual. The Title VII and § 1981 promotion claims will be dismissed in their entirety.

As to the Title VII and § 1981 discharge claims, plaintiff apparently relies only on a claim of retaliation and no longer claims that the discharge was based on racial discrimination. See Pl. Memo. of Law in Opposition to Def. Motion for Summary Judgment § III(A)(4) ("Pl. Memo."). But compare id. § I at 2. In any event, plaintiff's claims of discriminatory discharge would be subject to dismissal in that she does not make out a prima facie case of such a claim. Plaintiff cannot satisfy the fourth element in that she presents no evidence that non-African-Americans were treated more favorably than plaintiff. The Title VII and § 1981 discriminatory discharge claims will be dismissed.

As to the retaliatory discharge claims, there is no dispute that the first two elements are satisfied. The question, as to the prima facie case, is whether plaintiff can satisfy the third element. In arguing a causal nexus exists, plaintiff primarily focuses on the motivation of Cinabro and also contends Less had a retaliatory motive. Plaintiff contends Cinabro was

retaliating because he was aware plaintiff had alleged discrimination in the process that resulted in her being rejected for and Cinabro being promoted to Payroll Supervisor. As to Less, it is contended that the January 21, 2000 incident was sufficiently close in time to plaintiff's November 29, 1999 filing of the EEOC charge concerning the denial of the Payroll Supervisor promotion and also that Denson I was still pending at that time.[18] But even if there is adequate evidence of Cinabro's and Less's retaliatory motives, they were not the ones who made the decision to discharge plaintiff. Cinabro, and possibly Less as well, were witnesses at the hearing before O'Neil. However, the ones making the decision that plaintiff had been insubordinate and that she should be discharged were O'Neil, Racibozynski,[19] and the Executive Director.

---

[18]On December 15, 1999, Denson I was reassigned to a new judge. On December 16, the new judge ordered that the parties (1) meet to discuss settlement, (2) by January 10, 2000, file a joint status report on the case, and (3) appear for a status hearing on January 11, 2000.

[19]In the section of her brief where she argues there is adequate evidence of a causal nexus, plaintiff refers only to Cinabro's and Less's retaliatory motives. See Pl. Memo. § III(A)(4). In another section entitled "Background to Metra's Termination of Plaintiff," plaintiff contends: "Plaintiff's termination, which was recommended by Less for insubordination, was upheld by Frank Racibozynski. Racibozynski, who had approved plaintiff's 5-day suspension in 1997, which was the subject of her 1998 EEOC charge and her then pending lawsuit in federal court, approved her termination for insubordination on January 21, 1999 [sic]." Id. § II[F] at 8. But even that section does not expressly contend there is adequate evidence to connect plaintiff's discharge to Racibozynski's retaliatory motive and instead focuses on Cinabro's and Less's motives. [No

A supervisory employee's discriminatory or retaliatory intent is relevant only if the supervisor is a decisionmaker with respect to the pertinent adverse employment action or if the supervisor's "role in the selection process was such that [the supervisor's] possible discriminatory intent could reasonably be attributed to the primary decision maker." Courtney v. Biosound, Inc., 42 F.3d 414, 419 (7th Cir. 1994).

> Significantly, "where the discharging official made the discharge decision alone, discriminatory thoughts and motives of lower officials cannot be attributed to the discharging official." Jardien v. Winston Network, Inc., 888 F.2d 1151, 1155 (7th Cir. 1989); see also Oxman v. WLS-TV, 12 F.3d 652, 660 (7th Cir. 1993). However, the converse is also true; where a lower official "persuades his supervisors to endorse his decision to fire," Shager v. Upjohn Co., 913 F.2d 398, 402 (7th Cir. 1990), or "recommend[s]" the dismissal of, EEOC v. Manville Sales Corp., 27 F.3d 1089, 1094 (5th Cir. 1994), or otherwise provides "input" in an employee's termination, Jardien, 888 F.2d at 1155, the superior can be liable for endorsing or "act[ing] as the conduit of" the subordinate's prejudice. Shager, 913 F.2d at 405.

Dale v. Indianapolis Police Department, 919 F. Supp. 1242, 1246 (S.D. Ind. 1996).

Here, there is no evidence that O'Neil or Racibozynski sought or received input from Cinabro and Less other than as fact witnesses at O'Neil's investigatory hearing. There is no sufficient basis for drawing an inference that would attribute to

---

evidence is presented to support the contention that Less recommended the termination.]

the decisionmakers for plaintiff's discharge any retaliatory motivation that Cinabro or Less may have harbored.

As previously indicated, plaintiff does not appear to contend that there is adequate evidence to support a causal link between plaintiff's discharge and a retaliatory motive on Racibozynski's part. Racibozynski's decision to discharge plaintiff occurred while _Denson I_ was still pending. Less than a month before Racibozynski decided to discharge plaintiff, the parties had filed a status report in front of a new judge. Perhaps Racibozynski was again contacted at that time because he was a likely witness in the case. Plaintiff, however, points to no evidence as to any contact Racibozynski had with Metra's attorney in that case. It would be speculation that he was contacted near the time of plaintiff's discharge. Moreover, even if he was contacted, _Denson I_ only implicated Racibozynski's misconduct, it did not name him as a defendant or seek any damages from him. Plaintiff does not provide sufficient evidence to find a causal link between discrimination complaints related to Racibozynski and his decision to discharge plaintiff. Even if plaintiff has not waived such a claim by failing to make a sufficient argument in her summary judgment brief, plaintiff does not make out a _prima facie_ case of a retaliation-motivated discharge by Racibozynski.

The Title VII and § 1981 discharge claims will be dismissed in their entirety.

Plaintiff's Title VII claim against Metra is also based on two other purported adverse employment actions. One is Metra accepting for investigation the allegedly frivolous charge that plaintiff was sexually harassing Holmes. It is further contended that Metra retaliated for plaintiff's opposition to this complaint through Franklin's issuance of the letter of caution.

There is no cognizable Title VII claim unless plaintiff suffered an adverse employment action. Oest v. Illinois Department of Corrections, 240 F.3d 605, 613 (7th Cir. 2001).

> In determining what constitutes adverse action, the Seventh Circuit has defined that term broadly. Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996). Yet, "it remains true that the adverse action must be material." Drake v. Minnesota Mining & Mfg., 134 F.3d 878, 885 (7th Cir. 1998). "[N]ot everything that makes an employee unhappy is an actionable adverse action." Smart, 89 F.3d at 441. Differences in treatment that have "little or no effect on an employee's job" do not give rise to a Title VII retaliation claim. Sweeney [v. West], 149 F.3d [550,] 556 [(7th Cir. 1998)]. Rather, the conduct of which the plaintiff complains must have some "tangible job consequence." Id. Generally, "a materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." Fortier v. Ameritech Mobile Comm. Inc., 161 F.3d 1106, 1112 n.7 (7th Cir. 1998) (quoting Crady v. Liberty Nat'l Bank & Trust Co. of Indiana, 993 F.2d 132, 136 (7th Cir. 1993)).

Belovics v. United Airlines, Inc., 1999 WL 967529 *2 (N.D. Ill. Oct. 7, 1999). See also Oest, 240 F.3d at 612-13; Spencer v. Thomas, 2001 WL 893846 *3 (N.D. Ill. Aug. 2, 2001).

It is uncontested that Holmes's charge was dropped with no discipline being imposed on plaintiff. The initiation of an investigation does not itself constitute an adverse employment action under Title VII. Cf. Belovics, 1999 WL 967529 at *2 (supervisor's fabrication of charges of misconduct). Like a negative evaluation, reprimand, or other such document placed in an employee's personnel file, being issued a letter of caution, by itself, does not constitute an adverse employment action. See Oest, 240 F.3d at 613. The Title VII claim based on the disputes with Holmes and Simon and the letter of caution will be dismissed.

The last Title VII claim is based on the failure to provide plaintiff with the equipment (a filing cabinet and 40-inch table) that was recommended following the second ergonomics evaluations. Plaintiff apparently contends the denial of the equipment was retaliatory only, not racially discriminatory.[20] See Pl. Memo. § III(A)(3). Plaintiff contends the third element of a retaliation claim is satisfied because plaintiff filed EEO complaints in late November and early December. Metra contends that inferring retaliation would ignore the numerous actions it took to treat and accommodate plaintiff's injury.

---

[20]In any event, as regards the denial of equipment, no evidence is presented that non-African-Americans were treated more favorably nor is any other basis presented for inferring racial discrimination.

Since failure to provide the additional equipment could have resulted in continued deterioration of plaintiff's health and her ability to perform her work, denial of the equipment could qualify as an adverse employment action.[21] See <u>Spencer</u>, 2001 WL 893846 at *3. Nevertheless, plaintiff's claim is subject to dismissal because there is an insufficient basis for inferring a causal nexus. Beginning with her first reports of an injury in April 1999, plaintiff was promptly sent for a number of medical examinations, two ergonomic studies were conducted, and most of the equipment recommended in the first ergonomic study was provided. Throughout this time period, plaintiff filed or had pending various EEO complaints internally, before the EEOC, and in court. Since substantial services were provided while other complaints were pending or filed, it cannot be inferred from the failure to promptly provide the last recommended treatment that the delay or denial was prompted by whatever complaint was filed or pending near that time. Moreover, the first ergonomic study recommended a longer desk which was never provided, yet there is no contention that the failure to provide the longer desk was motivated by retaliation. Under these circumstances, plaintiff needs a more particularized link to be able to infer a causal

---

[21]Metra contends that the equipment was unnecessary because the doctor and ergonomic specialist continued to opine that plaintiff could work without restriction. The specialist's report, however, recommended the change in the work station and therefore it is reasonable to infer that plaintiff could only work without restriction if the changes were made.

nexus.  This aspect of the Title VII claim will also be dismissed.

Still to be considered is plaintiff's FELA claim. Defendant contends this claim is barred by FELA's three-year statute of limitations or, alternatively, covered by the release plaintiff signed.  There is sufficient evidence to infer that plaintiff suffered a new or reaggravated injury in August 1999 or thereafter.  Clearly, such a claim falls within a three-year limitation period.  The only question, then, would be whether such an injury was released.  To have been released, it would have to "arise from or out of injuries and damages, known or unknown, permanent or otherwise, . . . sustained or received by me at or near Chicago, State of Illinois, on or about the 1st. day of April, 1999."

Plaintiff does not dispute that Illinois law applies to the construction of the release.  See Capocy v. Kirtadze, 183 F.3d 629, 632 (7th Cir. 1999).  The burden is on Metra to establish that the FELA claim falls within the terms of the release.  Doctor's Associates, Inc. v. Duree, 319 Ill. App. 3d 1032, 745 N.E.2d 1270, 1281 (1st Dist.), appeal denied, 195 Ill. 2d 577, 755 N.E.2d 476 (2001).  Plaintiff has not presented evidence conclusively establishing that plaintiff's later injuries arose from the April 1st, 1999 injury that was

released.[22]  Summary judgment cannot be granted on the FELA claim.

    IT IS THEREFORE ORDERED that defendants' motion to strike plaintiff's affidavit [79] is denied without prejudice. Defendants' motion for summary judgment [61] is granted in part and denied in part.  Counts I and II of the Second Amended Complaint are dismissed.  Count III is limited to being based on an injury or injuries occurring in August 1999 or later. Defendants Countess Cary, Thomas Less, and Frank Racibozynski are dismissed from this action.  In open court on February 13, 2002 at 11:00 a.m., the remaining parties shall present an original and one copy of their final pretrial order in full compliance with Local Rule 16.1 and Local Rule Forms 16.1.1 and 16.1.2.


                    ENTER:


                                _____
                                UNITED STATES DISTRICT JUDGE

DATED:  JANUARY  3  , 2002


---

[22]No opinion is expressed regarding the precise construction of the release.  See generally Martin v. Illinois Farmers Insurance, 318 Ill. App. 3d 751, 742 N.E.2d 848, 855-56 (1st Dist. 2000); Abbott Laboratories v. CVS Pharmacy, Inc., 2001 WL 1298712 *6 (N.D. Ill. Oct. 24, 2001).